Briggs *v.* Palmer.

---·•◦•·---

WILLIAM S. BRIGGS *vs.* JOHN J. PALMER, special receiver.

Where assignees, under an assignment made for the benefit of creditors, reconvey to the assignor the real estate embraced in such assignment, without having paid and satisfied the debts for the payment of which the trust estate was created, such reconveyance is absolutely void, at least as to all creditors whose debts were provided for in the assignment, and which remained unpaid at the date of the reconveyance.

And in a contest between a person claiming title under and in consonance with the trusts created by the assignment, and an incumbrancer of the title attempted to be conveyed by the trustees in contravention of such trusts, the validity of the mortgage will be in no way helped by the fact that the mortgagees, at the time of taking it, had no actual notice of the existence of a claim against the trust estate, or of the assignment, and reconveyance.

The assignment, and the reconveyance, are matters of record, which the statute makes sufficient notice to all subsequent purchasers and incumbrancers. And such purchasers or incumbrancers, having constructive notice of the assignment, are put upon inquiry as to all claims and rights under it.

Trustees cannot, by a recital in a reconveyance of the assigned property, contrary to the fact, affect the interests of *cestuis que trust.* Therefore a recital that the debts of the assignor have all been paid, will be of no avail.

Briggs *v.* Palmer.

After a debtor has assigned his real estate in trust for the benefit of creditors, he, having no title, cannot create an incumbrance upon the estate. A mortgage executed by him will therefore, at most, only operate as an assignment or equitable mortgage of his residuary interest, after the trust shall have been fully executed. Under this, the mortgagee may, *it seems*, pay a debt existing against the trust estate, before a sale of the trust property to pay the debt, and a transfer of the title.

But after the title has passed to a bona fide purchaser at a judicial sale ordered for the purpose of satisfying a previous debt of the assignor, there can be no *redemption* by any one standing in the position of the assignor, or claiming under him subsequent to the creation of the trust estate.

THIS was an appeal, by the defendant, from a judgment entered at a special term. The relief demanded by the complaint was that the defendant be directed to release and discharge certain premises from the lien and operation of a mortgage thereon, executed by Cornelius Masten and wife to Joseph D. Beers, president of the North American Trust and Banking Company, on the 1st of November, 1838; and that he, and all persons claiming an interest in said mortgage subsequent to the commencement of this action be perpetually enjoined from foreclosing the same, or enforcing the lien thereof against the premises described in said mortgage. The action was tried at the circuit in Yates county in November, 1853, before Mr. Justice WELLES, without a jury, when after hearing the proofs and allegations of the respective parties, the following facts were found by the court, to wit: That Cornelius Masten, on the 21st day of April, 1834, being in embarrassed circumstances, made a general assignment of all his property and effects to Joel Dorman, Evert Van Buren and James C. Robinson, in trust for the benefit of his creditors, as mentioned and set forth in the complaint. That said deed of assignment was duly acknowledged and recorded in the office of the clerk of Yates county, on the 29th day of April, 1834, in the book of deeds, as a deed conveying real estate. That immediately after the execution and delivering of the said deed of assignment, Dorman, Robinson and Van Buren, as assignees and trustees under the same, accepted the trust therein conferred, and entered upon the execution of the said trust, and for that purpose took into their

possession and under their control the principal part of the assigned property. That at the time of making the said assignment Joel Dorman was liable as security and indorser for Masten to a large amount, the payment of which was provided for in and by the deed of assignment as mentioned in the complaint. That after making said assignment, Dorman in his lifetime advanced and paid large sums of money for Masten as his indorser, the payment of which was provided for in said assignment. That Dorman died on the 26th day of March, 1836, intestate, as mentioned in the complaint, and that Masten was indebted to Dorman at the time of his death, by reason of advances made by him as aforesaid. That after his death Reuben Crawford, Calvin S. Coates and David B. Prosser were duly appointed administrators, as mentioned in the complaint. That Prosser, one of the administrators of Dorman, after his appointment, and some time in the year 1837, called upon Robinson, one of the surviving assignees and trustees under the deed of assignment of the 21st day of April, 1834, and requested payment of the sum advanced by Dorman in his lifetime, for the use and benefit of Masten, and informed Robinson of the claim of Alva Clark against Dorman's administrators, as mentioned in the complaint. That the administrators of Dorman, on the 25th day of April, 1839, filed their bill in the court of chancery, before the vice chancellor of the seventh circuit, against Masten, Robinson and Van Buren, to compel payment of the debts alleged to be due to them, as the representatives of Dorman, and to have been provided for under the assignment. That no notice of lis pendens was filed. That after the final decree or judgment was obtained in that suit, certain premises were sold under the same, and purchased by the plaintiff, for the use and purpose mentioned in the complaint, and the premises duly conveyed to the plaintiff by the referee, and the possession thereof taken by him under his deed, and that he still so holds the same. That on the 17th day of September, 1838, Robinson and Van Buren, as surviving assignees and trustees under the deed of assignment of the 21st of April, 1834, under their hands and seals, after reciting the making of the assignment as aforesaid, and that the trust

had been executed, released and reconveyed to Masten, all the assigned property then remaining in their hands undisposed of, among which were the premises purchased by the plaintiff, which said deed or release was duly acknowledged and recorded in the office of the clerk of Yates county, on the 12th day of November, 1838, as a deed of real estate. That Robinson, Van Buren and Masten, at the time of making and executing said release, had notice of the claim of the personal representatives of Dorman upon the assigned property. That Robinson and Van Buren made and executed the said release in contravention of the provision of said deed of assignment and in violation of the trust therein expressed. That on the 1st of November, 1838, Masten and his wife made, executed and delivered a mortgage to Joseph D. Beers, president of the North American Trust and Banking Company, on the premises previously purchased by the plaintiff, for $9000, payable in one year with interest; which mortgage was recorded in the office of the clerk of Yates county, on the 4th day of May, 1839. That at the time of the recording of the said mortgage, no advancement or payment had been made to Masten on the account thereof. That on the 21st day of May, 1839, this mortgage was delivered to the North American Trust and Banking Company, and that company issued and delivered to Masten ninety shares of the stock of said company at $100 per share, amounting to $9000, as the consideration for said mortgage. That said stock was issued and delivered to Masten in good faith, without actual notice of the claim of Dorman or his personal representatives. That the abstract of title made by the clerk of Yates county for the said company, bearing date the 5th day of May, 1839, and upon which the agents of the company acted in receiving said mortgage and issuing the stock thereon, did not contain the said assignment of the 21st of April, 1834, or the release of the 17th September, 1838, or any note, reference or allusion to them or either of them. That Masten continued to reside in one of the dwelling houses upon the premises from the time of making the assignment until the time of his death, on 31st October, 1850. That Robinson, one of the surviving assignees, is insolvent, and has been so since

1840, and that the defendant, as the special receiver of the North American Trust and Banking Company, is the assignee and holder of the mortgage given by Masten and wife to Beers, as mentioned in the answer of the defendant. The court found, as conclusions of law from the foregoing facts, 1st. That the release or reassignment of the 17th September, 1838, executed by Robinson and Van Buren to Masten, as between the parties thereto, was absolutely void, and that no title passed under the same to Masten, so far as the claim of the personal representatives of Dorman was concerned. 2d. That the plaintiff in this action as the purchaser of the premises under the decree obtained by the personal representatives of Dorman, was entitled to have and hold the premises conveyed to him by the referee free, clear and discharged from the lien of the mortgage mentioned in the complaint given by Masten and wife to Beers, as president, &c.

The following opinion was given by the justice, at the special term :

"WELLES, J. The revised statutes provide that when the trust shall be expressed in the instrument creating the estate, every sale, conveyance, or other act of the trustees, in contravention of the trust, shall be absolutely void. (1 *R. S.* 730, § 65.) The evidence establishes that the trusts created in and by the assignment of C. Masten to Dorman, Van Buren and Robinson, were not all executed at the time of the reassignment by the two surviving assignees to Masten. The decree or judgment in the suit by Dorman's administrators against Masten and the two surviving assignees, Van Buren and Robinson, shows that a considerable debt or liability to Dorman, the payment of which was provided for by the assignment, and being the same debt which the judgment in that case made chargeable upon the lands in question, was unpaid at the time of the reassignment, and has remained unpaid to the present time. The assignment was expressed to be in trust for the payment of debts. The reassignment was therefore, as between the parties to it at least, clearly in contravention of the trust, and void.

The real question in this case, and one in which I have

considerable difficulty, is whether under the circumstances the defendant and those whose interests he represents, are to be affected by the fact that the trusts were unexecuted. The re-assignment, which was duly recorded before the consideration for the mortgage was advanced to Masten, recited that the trusts had been executed. It was given more than four years after the instrument creating the trusts was executed, and nearly two years after the death of Dorman. Masten, the assignor, was in possession of the premises in question, a part of the assigned property, from the date of the assignment, until his death in October, 1850, and no steps were taken by the assignees to disturb him or to dispose of this property. It is contended on the part of the defendant, that looking at the provisions of the assignment, and the nature of the property assigned, abundant time had elapsed to enable the assignees to complete the execution of the trust, and to show that if it was not executed even at the death of Dorman, they had been guilty of culpable negligence; that if under such a state of facts the presumption that the assignees had done their duty and fully executed the trusts would not arise, still when the surviving assignees declare the trusts executed, and reconvey the property, the plaintiff should be held precluded from setting up the contrary, as against a bona fide incumbrancer without notice, who may be presumed to have parted with his money and taken the mortgage upon the faith of the state of things referred to. Admitting the existence of these presumptions, I am nevertheless of the opinion that they are not conclusive, but may be rebutted and overthrown by evidence, which has been completely done. Dorman was a *cestui que trust* under the assignment, as well as a trustee. Not quite two years had elapsed after the assignment was executed, when he died. The moneys for which he was liable, and for which the decree was made, or some part of them, had not been paid at his death, but were paid afterwards by his administrators. The trust as to him ceased at his death, and passed to his co-trustees, but his interest as *cestui que trust* survived to his personal representatives. They commenced their suit in equity to have them ascertained and adjudicated, very soon after

the death of their intestate, and that suit was protracted by
causes for which, so far as the papers show, they are not ac-
countable, until 1852, and a short time before this action was
commenced.   When the Trust Company took their mortgage,
or rather when they advanced their stock upon it, the records
in the county clerk's office gave them notice that Masten held
under the deed of reassignment by the assignees to him, and
the law said to them, that if the recital in that deed, that the
trusts were executed, was untrue, the deed was given in contra-
vention of the trust, and was void.   I incline to think, therefore,
that they acted at the risk of that turning out to be the fact.
If the mortgage had been given by the assignees and the con-
sideration paid to them, it would probably have been a valid
incumbrance if done in good faith on the part of the mortgagee,
and provided also the terms of the assignment would authorize
the assignees to raise money by mortgaging the trust property
for the purposes of the trusts.   In such case the person advan-
cing the money would not be responsible for its proper applica-
tion.   But such was not this transaction.   The money was not
loaned to the trustees, but to Masten in his own right, and the
mortgage given by him as security depended for its value as a
security, upon his title to the property mortgaged, and that de-
pended upon the reassignment by the surviving assignees to
him, which has been shown to have been in contravention of the
trust, and which the statute declares to be absolutely void.

The defendant's counsel contends that the utmost liability of
the defendant is to pay the plaintiff the sum paid by him for
the lands in question at the referee's sale : upon doing which the
sale to the plaintiff will be null and void.   But I do not think
so.   The plaintiff has either a complete legal title wholly dis-
charged from the mortgage, or he has such title subject to the
mortgage.   I am not aware of any principle by which the de-
fendant has the right to claim an equity of redemption.

There must be judgment for the plaintiff substantially ac-
cording to the prayer of his complaint, but no costs to be allowed
to either party as against the other."

Briggs *v.* Palmer.

A judgment was accordingly entered declaring and adjudging that the deed of release executed by Robinson and Van Buren, as surviving assignees, to Masten, was void as between the parties to this action, and all persons claiming or to claim through or under them, or either of them, subsequent to the commencement of this action. It was further ordered and adjudged that the defendant John J. Palmer, as special receiver of the North American Trust and Banking Company, be authorized and directed to execute and deliver to the plaintiff in this action, a good, valid and sufficient release in law, releasing and discharging the premises mentioned and described in the complaint, as the premises purchased by the plaintiff at the sale made by the referee on the 22d day of June, 1852, from the lien and operation of the mortgage executed by Cornelius Masten and wife to Joseph D. Beers, president of the North American Trust and Banking Company, bearing date the first day of November, 1838. And it was further ordered and adjudged that the said John J. Palmer, and all persons claiming or to claim under and through him, any interest, right or title to said mortgage, or the moneys intended to be secured by the same, subsequent to the commencement of this action, be perpetually enjoined from foreclosing the said mortgage, or in any way or manner enforcing or attempting to enforce the lien of said mortgage, so executed by said Masten and wife to the said Joseph D. Beers, against the said premises so directed to be released, or any part or parcel thereof. And it was further adjudged that neither party have costs as against the other party.

*B. W. Bonney,* for the appellant. I. The defendant holds the position of *a bona fide purchaser* (mortgagee) for full consideration paid, without notice; and is entitled to all the benefit and protection which that position affords. This is not questioned, and is expressly found by the court below.

II. The judgment appealed from rests upon two conclusions of law, stated by the justice before whom the action was tried, at special term; in both of which, as the appellant insists, there is error. (1.) The reassignment, dated 17th September, 1838,

executed by Robinson and Van Buren, surviving assignees, to Masten, is not, as against this defendant, a conveyance in contravention of the trusts expressed in the assignment, and therefore is not void, as is supposed. (1 *R. S.* 730, § 65.) On the contrary, such reassignment purports to be and upon its face is in strict accordance with and a mere performance of the trusts of the assignment. (*Burrill on Assignments,* 494. *Brashear* v. *West,* 7 *Peters,* 608. *Halsey* v. *Whitney,* 4 *Mason,* 222, 3. *Lazarus* v. *Commonwealth Ins. Co.,* 19 *Pick.* 81.) The assignees, under the assignment in question, had full power to sell and convey the assigned property, or any part of it; and no purchaser was bound to ascertain the necessity of the sale, or to inquire as to the existence of unpaid debts, or to see to the application of the purchase money. In case of any misappropriation of the fund, the creditors must seek their remedy against the assignees. (1 *R. S.* 729, §§ 60, 66, 67. *Hill on Trustees,* 342, *Am. ed.* 2 *Story's Eq. Jur.* §§ 1127, 1131 *to* 1134. *Gardner* v. *Gardner,* 3 *Mason,* 178.) The assignees not only had the power, but it was their duty, after payment of debts, to reconvey the residue of the assigned property to the assignor, and the same rules and principles apply to a purchase made after such reconveyance as to a purchase directly from the assignees themselves. The assignees were the agents and trustees of the creditors entitled to the benefit of the assignment. If the creditors were not paid, the execution of the reassignment, with its recitals, was a fraud, the consequences of which must be borne by the creditors rather than by a *bona fide* purchaser. In this case there was nothing to put a purchaser upon inquiry as to the *bona fides* of the reconveyance, or to raise a suspicion that Dorman's debt had not been paid; on the contrary, all the circumstances were in favor of the integrity of the transaction. It was the duty of the assignees to sell the assigned property, and close their trust without delay, and full time had elapsed to raise the presumption that they had done so, and that the recitals in the reassignment were true. (*Burrill on Assignments,* 451. *Hart* v. *Crane,* 7 *Paige,* 37.) Dorman was a preferred creditor and also assignee, and the presumption that his debt

had been paid, especially, arose.　Masten resided on and was in full possession of the premises in question, which, as in favor of a *bona fide* purchaser, against Dorman's representatives, is conclusive to support the reconveyance, and the title of such purchaser derived through it.　If no conveyance had been found on the record, the facts of the case authorize the presumption that a reconveyance had been made.　(*Hill on Trustees,* 556, 7, 8, *and cases there cited.　England* v. *Slade,* 4 *Term Rep.* 682. 1 *R. S.* 726, § 62 *to* 67.)　The fact that Masten remained apparent owner and in possession and occupation of the premises in question from the time of making the assignment, is, as against a *bona fide* creditor or purchaser, evidence of fraud in the assignment, unless the other assigned property was sufficient to pay all the debts of the assignor, as to which there is no evidence.　(2.) The plaintiff in this action, by his purchase under the decree in the case of Dorman's administrators against Masten, &c. has acquired no title to the premises in question, as against the mortgage now held by the defendant as special receiver.　The bill of Dorman's administrators against Masten, &c. was not framed or intended to reach this real estate or any part of the assigned property ; and no notice of *lis pendens* was filed.　The decree of the chancellor, under which the plaintiff's title (if any) is derived, gives no right to or interest in the premises in question, as against the defendant's mortgage.　The proceedings under the chancellor's decree, the judgment of the supreme court founded thereon, and the sale and conveyance under such judgment, gave to the plaintiff no right or title beyond what was adjudged by the chancellor ; and certainly none as against this defendant, who was no party to that suit.

III. The assignment under which the plaintiff claims was only a security for the payment of the debt alleged to have been owing by Masten to Dorman ; and, so far as this real estate is concerned, was, in effect, a mortgage.　The proceedings and sale in the suit of Dorman's administrators against Masten, &c. amount merely to a foreclosure of that mortgage.　And, even if we admit that Dorman's representatives had the prior lien on the premises, the plaintiff's title, derived under said decrees

and sale, is subject to the defendant's right, as a subsequent incumbrancer not made party to the foreclosure suit, to redeem on payment of the amount bidden and paid by the plaintiff, ($100,) with interest from the time of payment. No demand was made on the defendant to redeem before the commencement of this action, and therefore the plaintiff cannot claim costs.

*D. B. Prosser*, for the respondent. I. The final decree or judgment of the administrators of Dorman against Masten, Van Buren and Robinson, is conclusive evidence of the following facts : The indebtedness of Masten to Dorman at the time of Dorman's death ; that the payment of such indebtedness was secured and provided for in and by the deed of assignment made by Masten, bearing date 21st April, 1834 ; that such indebtedneess remained unpaid at the time of rendering such final judgment or decree ; that said debt was a lien upon the assigned property ; and that the reassignment of Robinson and Van Buren to Masten, dated 17th September, 1838, was in *contravention* of the *trust expressed* in the said deed of assignment ; and in fraud of the rights of Dorman and his estate. (*Candee* v. *Lord,* 2 *Comst.* 269.)

II. The release or reassignment from Robinson and Van Buren, the surviving assignees, to Masten having been made before the trust created in the deed of assignment had been executed, leaving the debt due to Dorman or his estate unpaid, was in *direct contravention* of such trust, and therefore *absolutely void ;* hence no title passed to Masten thereby. (1 *R. S.* 730, § 65. *Cruger* v. *Jones,* 18 *Barb.* 467. *Chitty on Contracts,* 229. 6 *Taunt.* 369.)

III. The defendant occupies the same position and relation as the mortgagee, and is entitled to the same, but no greater equities. The assignment having been recorded long before the mortgage in question was executed, the record thereof was constructive notice to the mortgagee, that Masten had no interest which he could mortgage. (12 *John.* 343. 1 *Selden,* 301. 1 *Howard's Appeal Cases,* 475, 476, 477 *and cases there cited.*) The omission of the clerk to notice the assignment in his cer-

Briggs *v.* Palmer.

tificate of search of title, upon which the mortgagee acted in taking the mortgage, cannot affect or prejudice the rights of the plaintiff under the decree.

IV. The recital in the release or reassignment "that the trust had been executed &c.," is not even *prima facie* evidence of that fact as against the plaintiff, for the following reasons : (1.) The plaintiff does not claim through this release, but in hostility thereto. (2.) Recitals are only evidence against the parties, their privies, or those claiming under or through the instrument containing the recital. (3.) Recitals are no higher evidence than the declarations of parties by which they may be estopped.

V. The defendant in his answer does not claim that the *trust had been executed.* To avail himself of such a defense it should have been set up in the answer ; nor is he entitled to the benefit of any presumption arising from the lapse of time. Presumptions are only allowed to prevail where it is the duty of some party or person to do an act, the omission of which would amount to a wrong ; and no presumption can in *any case* be allowed to prevail, where the proof, as in this case, is *positive* that the *trust had not been executed.* Presumptions are never allowed where the proof establishes the thing to the contrary. It is only in the *absence* of proof that presumptions are resorted to.

VI. The defendant has not by his answer put himself in a situation to avail himself of the defense, that from the lapse of time and the other facts in the case, the mortgagee had a right to *presume* the trust executed, for he *denies notice* of the assignment *in fact ;* and so far as the evidence in the case goes, it shows that he took the mortgage without notice, *in fact,* of the assignment ; if so, it follows that there was no presumption whatever for him to act upon. He could not presume a trust executed of which he had no knowledge.

VII. The personal representatives of Dorman cannot be affected by the acts or omissions of the surviving assignees, after the death of Dorman. Had the surviving assignees, after Dorman's death, *wholly renounced* the trust, and reconveyed the

asssigned property to Masten, still the property would remain liable for the debts of Masten, provided for in his assignment, into whose hands soever the same might pass. (4 *John. Ch.* 136. *Cruise's Dig. vols,* 1, 2, *ch.* 4, § 1, *subd.* 8, *p.* 488. 1 *McCord's Ch.* 132. 2 *John. Ch.* 343. 7 *Barb.* 354. 1 *Seld.* 301. 3 *John. Ch.* 344. *Story's Eq. Jur.* § 400.)

VIII. The judgment of the court directing a release of the mortgage and enjoining the foreclosure thereof, is in accordance with the well settled principles of equity. (*Nicol* v. *The Town of Huntington,* 1 *John. Ch.* 166. *Apthorp* v. *Comstock,* 2 *Paige,* 482. *Pettit* v. *Shepherd,* 5 *id.* 493. *Van Doren* v. *The Mayor &c. of New York,* 9 *id.* 388.)

*By the Court,* JOHNSON, J. The assignees of Masten held the real estate in question in trust to sell for the benefit of creditors. The trust was expressed in the assignment, by which the estate was created, and vested in the assignees, and is one authorized by statute. The assignees, the moment they took the assignment, became trustees for the creditors, with power to sell and convey the real estate for their benefit, but with no power to convey for any other object or purpose, so long as the trust created remained undischarged. The statute de-- clares that every conveyance made in contravention of the trust expressed in the instrument creating the estate shall be "absolutely void." (1 *R. S.* 730, § 65.)

The reconveyance, by the trustees, of the real estate embraced in the assignment, without paying and satisfying the debts for the payment of which the estate was created, was clearly in contravention of the trust. It was directly in opposition to the trust, and calculated, if not intended, to obstruct and defeat it, and falls clearly within the plain language and meaning of the acts. The conveyance must therefore be adjudged absolutely void, at least as to all creditors whose debts were provided for by the instrument creating the estate, and which remained unpaid at the date of such conveyance. By the assignment Masten, the assignee, divested himself of the entire estate in the lands in question, retaining nothing except

the equitable and incidental right to discharge the trusts by payment of the debts before sale, and thus entitle himself to a reconveyance of the whole estate, or to claim a reconveyance of the residue remaining unsold after the debts were discharged, or payment of the residue of the proceeds of the sales. The conveyance from the trustees being void, Masten had at the date of the defendant's mortgage, no title or interest in the land, which he could convey or encumber by a mortgage, at least against creditors interested in the trust estate. It may be that such a conveyance would be good against all persons except creditors. And I am inclined to the opinion that it would be, notwithstanding the peremptory language of the statute. The statute declares that all conveyances of lands by a person not in possession, which are at the time held adversely, shall be void, and yet courts have uniformly held that such a conveyance was good as between the parties, and conveyed the title of the grantor, as against all the world except the adverse holder. (*Livingston* v. *Proseus*, 2 *Hill*, 526. *Kenada* v. *Gardner*, 3 *Barb. S. C. R.* 589.) So here, I apprehend, had no creditor interposed his claims, the title of Masten thus derived from the assignees, would have been good as against all persons. But this does not, that I perceive, affect the question here, in a contest between a person claiming title under and in consonance with the trusts created by the assignment, and an incumbrancer of the title attempted to be conveyed in contravention of such trusts. The plaintiff's title must be adjudged to stand upon the same footing with one derived directly from the assignees by a sale and conveyance in pursuance of the trust. The trust was in nowise affected by the reconveyance, and it was the duty of a court of equity, when its aid was invoked, to compel its execution.

The validity of the mortgage is in no way helped, by the fact that the mortgagee at the time of taking it had no actual notice of the claim of the Dorman estate, or of the assignment and reconveyance. The assignment and reconveyance were both matters of record, which the statute makes sufficient notice to all subsequent purchasers and incumbrancers. Hav-

ing constructive notice of the assignment they were put upon inqniry as to all claims and rights under it. Nor is the recital of the assignees, in the reconveyance, that the debts were all paid, of any avail. The trustees could not ·by a recital in a deed of that character, contrary to the fact, affect the interests of *cestuis que trust*. They were put upon inquiry as to the facts, and it is no answer for them to say that they did not ascertain the true state of the case. The law imputes to them full knowledge of all the facts, and their mortgage must stand or fall by the state of facts actually existing at the time. The trustees have not the power to deprive the *cestuis que trust* of the protection of the statute by an erroneous statement. The risk was with the mortgagees as it is with all purchasers under a power.

I am not aware of any principle which would allow the mortgagees, or their assigns, to redeem the real estate by payment of the amount at which it was bid off at the sale under the decree, or, in short, to redeem at all. The mortgagor having no title could create no incumbrance upon the estate.' The mortgage could at most only operate as an assignment or equitable mortgage of Masten's residuary interest after the trust was fully executed. Under this the defendant might probably have paid the debt before a sale and transfer of the title. But the title having passed in pursuance of the trusts created, there can be no redemption by any one standing in the position of the assignor, or claiming under him, subsequent to the creation of the trust estate. Their claim must now be upon the residuary portion of the avails of the sale, if any. I do not see how the defendant could redeem, even by paying the whole debt. But this he does not propose to do.

I think there was no error either in the rulings or in the judgment at the special term, and that the judgment should be affirmed.

[Monroe General Term, September 3, 1855. *Selden, T. R. Strong* and *Johnson*, Justices.]